Patrick C. English, Esq. (PE7898)

Dines and English, L.L.C.

685 Van Houten Avenue

Clifton, New Jersey 07013

(973) 778-7575

Attorneys for Plaintiffs Devin Haney and Devin Haney Promotions, Inc.

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Devin Haney, Devin Haney Promotions, Inc : : Plaintiffs, : : v. : Ryan Garcia, Dave Honig, John Does : and Golden Boy Promotions, LLC. : : Defendants : | Civil Action No.: 24-CV-06845<br><br>FIRST AMENDED<br><br>COMPLAINT AND JURY DEMAND |

1

Comes Now Devin Haney and Devin Haney, Inc., by and through counsel, and state by way of Complaint:

Parties

1. Plaintiff Devin Haney is a Professional Boxer of great renown. He is a citizen of the State of Nevada.

2. Devin Haney Promotions, Inc is a Nevada Corporation and is a licensed promoter. It is wholly owned by Devin Haney. In relevant contract Documents it is misdesignated as an LLC.

3. Defendant Ryan Garcia is a Professional Boxer of great notoriety. He is a Citizen of the State of California.

4. Golden Boy Promotions , LLC. ("Golden Boy") is a boxing Promoter organized under the laws of the State of Delaware. Its principle offices are in the State of California.

5. Dave Honig is a fitness trainer residing in the State of New York.

6. Defendants John Does are persons and entities as yet unidentified who assisted Ryan Garcia in supplying or administering performance enhancing drugs and intravenous substances (IV's), as will be described more fully herein.

JURISDICTION AND VENUE

7. Jurisdiction is premised on 28 U.S.C. 1332 in that there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this District by virtue of 28 U.S.C. 1391 in that a substantial portion of the events referenced in this Complaint took place in the Eastern District of New York.

PRELIMINARY STATEMENT

9. The sport of boxing is a dangerous and violent one.

10. For fair and safe competition there are certain rules which have been developed. Among those rules are the prohibition of performance enhancing drugs and required weight classes.

11. Devin Haney is a professional boxer of great renown. As of April 20 of 2024 his record was unblemished with 31 wins against no losses. He held the World Boxing Council ("WBC") super lightweight championship and had previously held the undisputed lightweight championship, meaning that he held the titles of all major ratings organizations in that weight class. This included the titles of the WBC, the International Boxing Federation (IBF), the World Boxing Organization (WBO) and the World Boxing Association (WBA). He was universally considered one of the best pound for pound fighters extant today.

12. His boxing record as in now appears on Boxrec, the official boxing record keeper, is annexed as Exhibit A. It is blemished with a "no contest" listed in the Ryan Garcia bout.

13. Ryan Garcia was considered an erratic but talented boxer. A copy of his record as it currently appears on Boxrec is Exhibit B.

14. Ryan Garcia was promoted by Golden Boy.

15. Devin Haney and Ryan Garcia engaged in a professional prizefight on April 20, 2024, held at the Barclays Center in Brooklyn, New York.

16. As part of his promotional contract with Golden Boy Ryan Garcia agreed as follows:

3

(e) Boxer agrees to submit to anti-doping testing (in accordance with the standards of the Commission). In addition to such Commission required testing, Boxer shall submit to and fully comply with any and all additional drug testing protocols and procedures instituted by Promoter in connection with the Bouts hereunder, including Olympic-style drug testing including, but not limited to, multiple, random urine and blood tests at any time prior to any Bout hereunder, and urine and blood tests immediately following any Bout hereunder for all substances and processes banned by the entity designated by Promoter to conduct the testing, the Commission and/or sanctioning body if applicable ("Banned Substances"). All such testing shall be conducted by an accredited entity designated by Promoter in its sole discretion, provided that Promoter shall ensure that it is a condition of Boxer's opponents' bout agreements that the opponents shall submit to and comply with such additional drug testing protocols and procedures and that identical drug testing protocols and procedures shall apply to the opponents. Boxer hereby authorizes Promoter and whichever testing agency designated by Promoter to conduct anti-doping testing, to report all results of such testing to Promoter and Boxer's opponents' representatives immediately after the agency receives the results of such tests. In the event that Boxer tests positive for any Banned Substance (following the testing of an A sample and a B sample of the specimen in question), Boxer further authorizes the agency designated by Promoter to deliver the anti-doping testing report to the Commission and Fight Fax, Inc. Boxer agrees to execute any documents that are necessary in order to grant such authorizations.

17. He also made the following representation in his Promotional Contract:

4

(c) Boxer has and will fully, completely, accurately and truthfully complete and execute the medical examination questionnaires (or similar documents) required by Promoter's insurance carrier within three (3) days of Promoter's request for Boxer to complete and execute such questionnaires as required. Boxer represents that he does not have any mental or physical condition, sickness, disease or injury and is not taking any medication which may impair his ability to prepare for and/or give an honest exhibition of his skill in any Bout hereunder. Boxer agrees that he shall keep himself in "fighting shape" and that he will not allow his physical condition to deteriorate or his weight to fluctuate such that he would not be physically able to participate in any Bout offered to him hereunder, and that to the extent Boxer agrees to participate in a Bout at or below a particular weight that Boxer will make weight at the weigh-in for each Bout. Boxer further represents and warrants that he has not and will not during the term hereof (i) use any illegal substances or performance enhancing drugs (e.g., steroids); and (ii) has not attended a rehabilitation center or similar establishment for treatment for drug and/or alcohol dependency or drug and/or alcohol abuse at any time within the last eighteen (18) months.

18. These are standard clauses in promotional contracts and exist for the purpose of protecting not only Promoters but opposing fighters as well. Because they are standard clauses Mr. Haney and his representatives were aware that they existed.

19. In connection with the bout in question here, both Fighters agreed in their state bout contracts that they would abide by "the rules, regulations, policies and procedures of the New York State Athletic Commission" and agreed that the bout would be conducted at a weight of 140 pounds maximum.

20. The license applications submitted to the New York State Athletic Commission by both Mr. Garcia and Mr. Haney included a rider on drug use. Both made the following representation:

Applicant Affirmation – By my signature below I hereby subscribe and affirm under the penalties of perjury that I have reviewed the foregoing policy on prohibited drugs and/or illicit substances, that I agree to the terms described therein and that I am not currently using or otherwise under the influence of any prohibited drugs and/or illicit substances.

21. Further, as noted earlier, the bout was initially contractually to be for the WBC Super lightweight championship. The Rules and Regulations of the WBC provide, inter alia,

**Doping in Boxers. Boxers rated or participating in any contest sanctioned by the WBC shall not take, ingest, or have administered to him any substance, medicine, or drug, or engage in any artificial procedures such as blood doping transfusions, to or that may enhance or reduce the boxer's performance in the ring.**

22. Every rating organization in boxing and upon information and belief every United States Boxing Commission have similar Rules. These are well known, published, and Mr. Haney was entitled to rely upon them.

23. Mr. Haney and Mr. Garcia agreed to participate in a pay per view boxing event to be held at the Barclays Center on April 20, 2024.

24. Each agreed that the bout was to be held at 140 pounds for Mr. Haney's WBC Super Lightweight Title. Each agreed not to ingest Performance Enhancing Drugs or use prohibited enhancement methods. Each agreed to VADA testing.

25. During the run up to the bout (and prior) Mr. Garcia began acting in a bizarre manner. These bizarre actions were legion but , to quote a journalist:

"Garcia, who seemed to be in a something-induced state of mind, rifled through just about every conspiracy theory over the course of a multi-day social media meltdown. After starting the week with a clearly staged kidnapping of himself, 'King Ry' frenzied about aliens, satanic ritual sex abuse of minors, conjuring demons, Elon Musk as the antichrist, predictions of a June 6 earthquake that will destroy Los Angeles, and talked up a vision of his own literal crucifixion at the hands of the 'elites.' At one point, he started speaking in tongues. It got so bad that notable nutjob Alex Jones recorded a video urging Garcia to reel it back. By the end of the week, a disheveled and seemingly worn-out Garcia vowed to pull back on the exposing of evil while he's in camp for Haney, although he did leave the door open with a not-so-cryptic 'Just bc I'm training don't mean I'm done exposing.' A TikTok live video where he doubles down on his claims and ups the ante by promising to provide proof of time travel pretty much confirms that the craziness will continue."

It was impossible for Mr. Haney and his advisors to determine with certainty what was real to hype the bout and what was delusional.

26. The weigh in for the bout was on April 19, 2024. Garcia, in violation of his contractual obligations, came in 3 ½ pounds over the contracted weight At the time he publicly stated that he had tried to make weight but was unable to do so.

27. In reliance upon that representation Devin Haney entered into a contract revision where, for consideration, he allowed Garcia to come into the bout overweight.

28. After the Bout Garcia stated publicly that he had lied and he was overweight in order to get a competitive advantage over Haney. Had Garcia not lied about his purpose Haney would not have proceeded with the bout against him and/or would have taken steps to protect himself.

29. Further, Garcia demanded that the bout be for Mr. Haney's WBC title. In order to accomplish that Mr. Haney was required to pay $300,000 for another boxer to "step aside". This payment was unnecessary but for Mr. Garcia's demand and representation that he wished to fight for the WBC title, a fraudulent demand as he later stated that he never intended to make weight, a requirement to fight for the WBC title.

30. After the weigh in on April 19, 2024 sample collectors from the Voluntary Anti Doping Association (VADA) were present to take urine samples from both fighters. Haney gave his sample without incident but Garcia did not do so and did not give a full urine sample until 6:22 p.m., hours after the weigh in. The samples were sent to a properly certified testing laboratory.

31. VADA is the premier drug testing administrative organization in boxing.

32. The Haney/ Garcia bout took place on April 20, 2024. Garcia ostensibly won that bout on points, it was believed at the time. Two Judges ruled for Garcia and one had it as a draw.

33. VADA took urine samples from both fighters on April 20, 2024. Samples were sent for testing to a properly certified laboratory, SMARTL, located in in Salt Lake City.

34. While Haney tested negative for the presence of performance enhancing drugs, Garcia tested positive for a prohibited performance enhancing drug, to wit Osterine. Osterine is on the banned lists promulgated by VADA,by the World Anti

Doping Agency (WADA), by the New York State Athletic Commission and by the WBC. The positive results were from two samples, the first taken on April 19 and the second on April 20, the night of the fight.

35. The test results were not known on the night of the bout as it takes some time for the samples to be tested. It was also not known by Haney that Garcia had been taking intravenous fluids in direct violation of New York Athletic Commission requirements, VADA standards, and WADA standards.

36. When the test results were disclosed Garcia demanded that the "B" samples be tested. They also proved to be positive for Osterine, as did a third sample taken by the New York Athletic Commission.

37. Osterine is not approved for any medical use in the United States, however it is sold on the black market for its performance enhancing properties.

38. At no time did Devin Haney consent to engage in a bout against a boxer who was positive for a performance enhancing drug, performance enhancing procedure, or masking agent and would not have proceeded with the bout had he known. The New York State Athletic Commission would not have permitted the bout had it known of the positive finding or of Garcia's IV use.

39. Representatives of Mr. Garcia have publicly suggested that the Osterine was found in trace amounts. In fact, while there are a couple of Commissions in the United States which permit trace amounts of Osterine ( and New York, WADA, and VADA are not among them) the samples had quantities 35 to 60 times the amount considered in those jurisdiction to be trace amounts. Further the use of intravenous fluids is a well recognized masking technique so true values absent the masking may have been much higher.

40. As noted, during the run up to the bout Mr. Garcia was using IV's. The use of IV's is prohibited under WADA and VADA requirements without a therapeutic use exemption and is expressly prohibited under New York Athletic Commission guidelines. Upon information and belief no therapeutic use exemption was granted by the New York Athletic Commission and use was not disclosed on disclosures given to drug samplers. A video of Mr. Garcia receiving an IV of a fluid with a yellowish tinge may be found at: https://www.youtube.com/watch?v=mRbMkBi8yW4 at minute 2:29 through 3:37.

41. The Commission drug prohibitions include the following language:

The following are prohibited: a. Tampering, or attempting to tamper, to alter the integrity and validity of samples collected. Including but not limited to: Sample substitution and/or adulteration, e.g., addition of proteases to the sample. <u>b. Intravenous infusions and/or injections except for those approved in advance by the Commission.</u> (Emphasis added)

42. Among other illicit uses, IV's are a well known way to avoid positive drug tests as they dilute the urine. Similar language appears in VADA prohibitions and in WADA prohibitions.

43. Adding insult to the Commission and to the sport of boxing, Mr. Garcia has alleged that he was "high as f***ck during" his bout with Mr. Haney. This very clearly brings disrepute on the sport of boxing and by derivation on the New York State Athletic Commission.

44. We point out Section 208.29.of the New York Athletic Commission Rules It reads, :

<u>Prohibited substances and the authority of Commission to require drug testing of licensed athletes</u> The **Commission may, in its discretion, at any time require a licensed professional boxer or licensed professional mixed martial artist to submit to drug and/or prohibited substance testing at a date and time and in such manner as directed by the Commission. Any finding of prohibited substances, masking methods, or drugs may subject the combatant to** <u>disqualification</u> **or other disciplinary action.** <u>A schedule of prohibited substances and/or impermissible drugs shall be posted and maintained by the Commission on its official website.</u> **The use of any prohibited performance enhancing drug (PED) during training or competition shall be considered unsportsmanlike conduct, a failure to engage in good faith in honest competition and an act detrimental to the interests of combative sports, and shall subject any licensee found to be in violation of this prohibition to potential purse forfeiture, fine,** <u>change of bout result</u> **and license revocation. (emphasis added).**

36. Osterine is a prohibited substance under the rules of the New York Athletic Commission.

45. The use of IV's is prohibited under the rules of the New York Athletic Commission.

46. Subsequent to the public release of the drug testing results Ryan Garcia claimed that the Osterine was given to him by Dave "Scooter" Honig. Honig has denied that allegation and plaintiff must conduct discovery to establish the truth or falsity of Garcia's allegation.

9

47. The Actions of Ryan Garcia and those who assisted him evince a high degree of moral turpitude and demonstrate wonton dishonesty as to imply criminal indifference to his civil obligations as well as willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.

48. To engage in the bout, Devin Haney entered into contracts with Garcia's Promoter, Golden Boy . Those contracts are annexed as exhibit C. Collectively they provide that Haney is to receive 47% of the net profit of the bout.

## Count 1
### BATTERY (As to Garcia)

49. The allegations of prior and subsequent paragraphs are repeated as though set forth fully herein.

50. Ryan Garcia committed the tort of Battery on Devin Haney. While Devin Haney agreed to participate in a prize fight against Garcia, at no time did he agree to engage in a bout against an individual who had taken a performance enhancing drug. His consent was limited to a bout held fairly and under the rules and prohibitions set forth above.

51. Thus the fighting (touching) by Garcia was non consensual.

52. Devin Haney suffered damages in that he suffered physical injury, reputational damage which will amount to millions of dollars, and emotional and mental distress.

## Count 2
### FRAUD (As to Garcia)

53. The allegations of prior paragraphs and subsequent paragraphs are repeated as though set forth fully herein.

54. As set forth above Ryan Garcia made numerous representations about his non use of PED's and the weight at which he would be fighting. These include representations included on the VADA sample collection form, on documents filed

with the State of New York including but not limited to his bout contract and license application as well as his promotional agreement.

55. Mr. Garcia also represented that he had tried to make weight but had failed.

56. Garcia knew that Mr. Haney would rely upon those representations in agreeing to proceed with the bout.

57. Those representations by Garcia were untrue and knowingly so.

58. Devin Haney would never have fought against a boxer who was positive for a PED.

59. Devin Haney suffered damages as a result of the misrepresentations of Ryan Garcia.

## Count 3

### UNJUST ENRICHMENT (As to Garcia)

60. The allegations of prior and subsequent paragraphs are repeated at though set forth herein

61. By virtue of his actions Ryan Garcia was enriched, at the expense of Devin Haney, to the tune of millions of dollars.

62. Specifically Ryan Garcia advanced his reputation at the expense of Devin Haney. This translates to significant loss of future earnings for Devin Haney.

63. Ryan Garcia additionally received millions of dollars to which he was not entitled.

64. It is against equity and good conscience to permit Ryan Garcia to retain what is sought to be recovered in this action.

## Count 4

### THE ROLE OF JOHN DOES AND DAVID SCOOTER HONEG IN AIDING AND ABETING GARCIA'S TORTS

65. The allegations of the foregoing and subsequent paragraphs are set forth as though fully repeated herein.

66. Upon information and belief there were John Does who have yet to be identified who assisted Ryan Garcia in his doping scheme. It is anticipated that discovery will provide the identities of such persons or entities.

11

67. John Does aided and abetted Ryan Garcia in his actions and are liable to the same extent as Ryan Garcia for doing so.

68. Ryan Garcia has publicly accused David "Scooter" Honig of providing to him supplements containing osterine.

69. If the allegations made by Ryan Garcia against Dave "Scooter" Honig are true, he similarly would be liable.

Count 5

BREACH OF CONTRACT AND/ OR UNJUST ENRICHMENT (As to Golden Boy)

70. The allegations of the foregoing and subsequent paragraphs are set forth as though fully repeated herein.

71. Golden Boy Promotions, Inc. promoted the April 20, 2024 bout between Devin Haney and Ryan Garcia. As to Devin Haney and Devin Haney, Inc. two contacts were entered into and are annexed as exhibit D.

72. Absent the events set forth herein Ryan Garcia was due in excess of 50% of the profits of the event, subject to modifications not here relevant.

73. On June 20, 2024, Ryan Garcia entered into a Consent Order with the New York State Athletic Commission. Under the terms of that Consent Order Ryan Garcia must return the purse he has been paid to his promoter, Golden Boy. Devin Haney and Devin Haney Inc. are contractually entitled to 47% of all profits for the bout and is thus entitled to 47% of the funds required to be returned under the Consent Order after an agreed upon percentage profit for Golden Boy. A copy of the Consent Order is annexed as Exhibit C.

74. Golden Boy has asserted that it will not share its extra profits from the bout as a result of the forfeiture ordered by the New York Athletic Commission. This constitutes a breach of contract by Golden Boy and /or and /or unjust enrichment to Golden Boy.

75. Payments to Ryan Garcia for the bout contractually flow through Golden Boy This arrangement makes Golden Boy a stakeholder for both Ryan Garcia and Devin Haney and Devin Haney Promotions, Inc..

Count 6

REQUEST FOR PRE JUDGEMENT ATTACHMENT

76. The allegations set forth above are repeated as though set forth herein.

77. Ryan Garcia is not a domiciliary of the State of New York.

78. If funds which would otherwise have been due are being held by Golden Boy, Mr. Haney is entitled to a pre judgement attachment under NY CPLR 6201 because he is not a domiciled in New York, because Plaintiff has a likelihood of success on the merits, and Mr. Garcia's bizarre actions makes it possible that the funds will be dissipated.

79. . Payments to Ryan Garcia for the bout contractually flow through Golden Boy This arrangement makes Golden Boy a stakeholder for both Ryan Garcia and Devin Haney.

80. If funds which would otherwise have been due are being held by Golden Boy, Mr. Haney is entitled to a pre judgement attachment under NY CPLR 6201 because he is not a domiciled in New York, because Plaintiff has a likelihood of success on the merits, and Mr. Garcia's bizarre actions makes it possible that the funds will be dissipated.

81. No harm will come to Ryan Garcia by virtue of this attachment. He has already been paid or has had payments made on his behalf in excess of 1.5 million dollars prior to discovery of his PED use and the funds will be available to him in the unlikely event he should prevail in this action.

82. It is therefore requested that the Court Order Golden Boy to place any additional funds which would be due Garcia to Haney in the specified percentage, into an account held by the Court or, in the alternative, into a segregated escrow account pending resolution of this matter.

Count 7

ACCOUNTING FROM GOLDEN BOY

83. The allegations set forth above are repeated as though set forth herein.

84. The contracts between Haney, Devin Haney Promotions, Inv. and Golden Boy provide that Haney and Devin Haney Promotions, Inc. are to receive 47% of profits from the Garcia event.

85. Golden Boy has provided an accounting of profits for the Haney/Garcia bout which in many respects is devoid of detail, particularly as to expenses.

86. Haney and Devin Haney Promotions, Inc. is entitled to a full accounting including back up material supporting alleged expenses.

**Wherefore** Devin Haney and Devin Haney, Inc. request judgement in the amount of their damages, punitive damages, costs and counsel fees.

**Wherefore** Devin Haney and Devin Haney, Inc. request that Golden boy be Ordered to turn over into escrow such funds as it may have which would otherwise be due to Ryan Garcia.

**Wherefore** Devin Haney and Devin Haney, Inc. request that the Court Order a full accounting including back up material by which categories of expenses were calculated.

**Wherefore** Devin Haney and Devin Haney, Inc. request such other relief as the Court may deem just and proper.

Respectfully submitted,

14

DINES AND ENGLISH LLC

685 Van Houten Avenue

Clifton, New Jersey 07013

973-778-7575 Telephone

973-778-7633 Fax

E mail : dinesandenglish@aol.com

By: /s/ Patrick C. English

Patrick English, Esq.

Counsel For Devin Haney and Devin Haney Promotions, Inc.

### DEMAND FOR JURY TRIAL

Plaintiffs, Devin Haney,and Devin Haney Promotions, Inc. demands a trial by jury for all issues so triable.

DINES AND ENGLISH LLC

685 Van Houten Avenue

Clifton, New Jersey 07013

973-778-7575 Telephone

973-778-7633 Fax

E mail : Dinesandenglish@aol.com

15

By: /s/ Patrick C. English

Patrick English, Esq.

Dated: December 19, 2024